UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

        Plaintiff,

        v.                          Crim. No. 08-368-HA

JUAN MANUEL IZGUERRA-ROBLES,        OPINION AND ORDER

        Defendant.

_____

HAGGERTY, District Judge:

        Defendant Juan Manuel Izguerra-Robles is charged with one count of Possession with

Intent to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).

Defendant filed a Motion to Suppress Evidence [20]. This court held evidentiary hearings on

June 30, July 1, and July 29, 2009. Six witnesses presented testimony. For the following

reasons, defendant's Motion to Suppress Evidence is granted.

**BACKGROUND**

PAGE 1 - OPINION AND ORDER

On August 13, 2008, Sergeant Doug Justus of the Portland Police Bureau (PPB) was driving on North Woolsey Avenue and saw Lawrence Swingle and defendant talking on the street near a pressure washer. Swingle is known by Sergeant Justus as a methamphetamine addict with a history of aggression and violence towards the police. Sergeant Justus believed Swingle supported his drug addiction by stealing property and trading it for money or drugs, however, Swingle has never been convicted of theft.

Sergeant Justus watched the men load the pressure washer into the trunk of defendant's car. Defendant drove himself and Swingle down the block to Swingle's mobile home. The government alleges that Sergeant Justus observed defendant commit three traffic violations during this short drive. Once the men arrived at Swingle's residence, they entered the mobile home. Sergeant Justus radioed for backup because he was in plain clothes and driving an unmarked car.

Subsequently, Sergeant Justus and Officer Kim Adams approached the back of the mobile home and ordered the men to exit. At that time, both Swingle and defendant were inside the mobile home and exited only after being ordered out. Upon exiting the mobile home, both men were taken into custody and questioned by the officers. Defendant, who does not speak English, was asked for identification, and shrugged his shoulders in response. Sergeant Justus then directed Officer Adams to handcuff defendant for failure to display a driver's license. Defendant had his Mexican driver's license in his pocket at this time. Defendant was read his *Miranda* rights in Spanish by Officer Adams and was allowed to read them himself.[1]

---

[1] Although not ultimately at issue in this case, Officer Adams did not provide defendant with constitutionally valid *Miranda* warnings. Officer Adams does not speak Spanish, and evidently has not received training from the PPB which would allow her to effectively read the

Approximately forty-five minutes later, Officer J.D. McGuire arrived at the scene.  By the time Officer McGuire arrived, Officer Fyfe, who speaks Spanish, was also present.  Officer Fyfe *Mirandized* defendant and Officer McGuire, through Officer Fyfe, told defendant that he was being detained so the police could investigate his identity and the ownership of the pressure washer.  Defendant says he told the officers his identity, that he had a Mexican driver's license, and that he was borrowing the pressure washer.

Officer McGuire asked defendant for permission to search his car for the limited purpose of recovering registration and insurance information.  Whether defendant gave consent to the search, and what the scope of that consent was, is disputed.  Officer McGuire looked in the center console and found a clear plastic bag containing suspected methamphetamine.

After Officer McGuire discovered the bag of methamphetamine, Officer Fyfe asked defendant for consent to search the car with a narcotics dog.  Officer Fyfe obtained defendant's consent and the officers subsequently found two pounds of methamphetamine in defendant's car (hidden under the center console and in a compartment behind the radio).   Three packages of methamphetamine were also seized from Swingle's mobile home.  Defendant was arrested and taken to the police station where he admitted he had been selling drugs for the past month.

/ / / /

---

PPB issue Spanish *Miranda* card she used.  In court, Officer Adams was asked to read the card and her pronunciation of the Spanish text contained on the card failed to fairly apprise defendant of his constitutional rights.

PAGE 3 - OPINION AND ORDER

**DISCUSSION**

The United States Constitution provides protections and mandates certain requirements in the event of government seizures of persons or their property. The Fourth Amendment to the Constitution mandates that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons to be seized.

U.S. Const. amend. IV. The Fourth Amendment's protections are applied to the states, and state actors, through the Fourteenth Amendment. *Elkins v. United States*, 364 U.S. 206, 212-13 (1960).

Defendant asks this court to suppress all evidence obtained by the government on August 13, 2008. Defendant contends that the police arrested him without probable cause and/or conducted an intrusive detention without reasonable suspicion. Defendant asserts that he did not give his voluntary consent to the search after his unlawful arrest, that the search went beyond the scope of any consent he did give, and that defendant's incriminating statement made as a result of the illegal search and seizure must be suppressed.

1. **Stop and Detention**

The Fourth Amendment's protections extend to brief investigatory stops that fall short of a traditional arrest. *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1020 (9th Cir. 2009) (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). Courts must determine, based on the totality of the circumstances, whether a police-initiated stop is supported by the officer's reasonable suspicion. *Id.* Reasonable suspicion exists if "specific, articulable facts . . . together with objective and reasonable inferences" suggest that the persons detained by the police are engaged

in criminal activity. *United States v. Lopez-Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000) (citations omitted).

An officer's mere hunch is insufficient to meet the reasonable suspicion standard. *Arvizu*, 534 U.S. at 274. However, conduct that appears innocent to untrained eyes can convey different information to an experienced and trained observer. *See United States v. Bernard*, 623 F.2d 551, 560 (9th Cir. 1980) ("The test is whether ordinary, reasonable men, possessed of the experience and knowledge of [the police officers] would conclude that the transaction . . . was more likely than not a criminal transaction") (citations omitted).

The government justifies the officers' initial stop based on Sergeant Justus' knowledge of Swingle and his belief that the pressure washer was likely stolen and being traded for drugs. However, this court finds that based on the totality of the circumstances, the police did not have reasonable suspicion to order defendant out of the mobile home. Defendant's conduct involving the pressure washer did not provide Sergeant Justus with a reasonable basis to "conclude that the transaction . . . was more likely than not a criminal transaction." *Bernard*, 623 F.2d at 560. The court considered the PPB's experience with Swingle, but notes that Swingle has never been convicted of stealing property. Additionally, Sergeant Justus' testified during the hearing that he stops Swingle every time he sees him, regardless of the circumstances. Such conduct, supported only by speculation is unwarranted and falls short of establishing reasonable suspicion to search and detain Swingle, and anybody unfortunate enough to be traveling with him, whenever Swingle is seen in possession of personal property.

PAGE 5 - OPINION AND ORDER

2.      **Arrest**

The Fourth Amendment requires police officers to have probable cause before making a

warrantless arrest.  *Ramirez*, 560 F.3d at 1023.  A police officer has probable cause to arrest a

suspect without a warrant if the available facts suggest a "fair probability" that the suspect has

committed a crime.  *United States v. Hartz*, 458 F.3d 1011, 1018 (9th Cir. 2006) (citing *United

States v. Valencia-Amezcua*, 278 F.3d 901, 906 (9th Cir. 2002)).

The government contends that the police were justified in stopping defendant because

Sergeant Justus observed defendant commit several traffic violations and that they were then

justified in arresting defendant when he failed to produce a driver's license.

The alleged traffic violations did not authorize the officers to order defendant out of the

home and arrest him.  *See* Or. Rev. Stat. (ORS) 810.410(3)(a),(b) (stating a police officer "shall

not arrest a person for a traffic violation" and may "stop and detain a person for a traffic

violation for the purposes of investigation reasonably related to the traffic violation"); *Welsh v.

Wisconsin*, 466 U.S. 740, 750 (1984) (the Supreme Court did not find exigent circumstances for

an arrest based on a relatively minor traffic violation).

The government contends that Sergeant Justus  was authorized to stop defendant for the

traffic violations and detain the occupants of the vehicle.  While the government is correct,

Sergeant Justus did not exercise that authority.  Rather, he followed defendant to Swingle's

mobile home, called and waited for backup, and then arrested defendant.  These actions cannot

be fairly characterized as a stop and detention.  This intrusion exceeded the authority granted

police officers to conduct traffic stops.  ORS 810.410(3)(a),(b)

PAGE 6 - OPINION AND ORDER

The government contends that defendant was lawfully placed under arrest only after failing to display a driver's license. This court disagrees and finds that defendant was constructively arrested when he was ordered from the mobile home. *See United States v. Al-Assawy*, 784 F.2d 890, 892-94 (9th Cir. 1985) (holding that coercive police conduct outside a home can result in the arrest of person within the home). Based on the totality of the circumstances, a reasonable person in defendant's position would not feel he was free to disobey the two police officers ordering him from the mobile home. Although the police officers did not brandish their weapons, defendant was given no choice but to exit the mobile home on their orders.

Even assuming defendant was not arrested until he failed to display a driver's license, and assuming the police had probable cause to effect that arrest, the scope of the arrest exceeded that granted by ORS 807.570. Under ORS 807.570, failure to present a license is an arrestable offense. However, "[a] police officer may detain a person arrested . . . only for such time as reasonably necessary to investigate and verify the person's identity." This offense does not allow "officers to use it as a ploy to conduct otherwise unauthorized searches." *State v. Bishop*, 967 P.2d 1241, 1245 (Or. App. 1998). Once the person's identity is verified, "detention is no longer reasonably necessary and the individual must be released." *Id.*

Defendant was held for approximately forty-five minutes before his car was searched, despite the fact that he had his Mexican driver's license in his pocket when he was arrested, and he was searched when arrested. After he was searched, the police should have verified his identity, issued him a citation, and sent him on his way. Instead, they held him for forty-five minutes and awaited the arrival of a Spanish speaking officer in order to attempt to gain his

consent to search his vehicle.  The scope of this arrest exceeded that authorized by ORS 807.570.

Because defendant was unlawfully arrested, the drugs found in his car as a result of the subsequent search, as well as the incriminating statements he made at the police station, can be suppressed as "fruit of the poisonous tree."  *See Wong Sun v. United States*, 371 U.S. 471, 488 (1963).  "The question of whether the exclusionary rule applies is an issue separate from whether Fourth Amendment rights were violated."  *United States v. Noster*, 573 F.3d 664, 670 (9th Cir. 2009).

Suppression of evidence is only justified when the discovery of evidence results from illegal government action.  *United States v. Pulliam*, 405 F.3d 782, 786 (9th Cir. 2005) (citation omitted).  A causal connection exists between the illegal action and the tainted evidence when "the illegal activity tends to significantly direct the investigation to the evidence in question."  *United States v. Johns*, 891 F.2d 243, 245 (9th Cir. 1989) (citation omitted).  However, subsequently tainted evidence may be admitted if the evidence is sufficiently attenuated from the illegal activity.  *See Wong Sun*, 371 U.S. at 487-88.

To determine attenuation, the Supreme Court utilizes a three-part test: (1) the temporal proximity between the illegality and the discovery of evidence, (2) the presence of any intervening circumstances, and (3) the purpose and flagrancy of the official misconduct.  *See United States v. Washington*, 490 F.3d 765, 776-77 (9th Cir. 2007) (citing *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975)).  The government bears the burden to show admissibility.  *Id.*

This court finds that both the discovery of the drugs and defendant's subsequent statements occurred as a direct result of defendant's illegal arrest and that there were no intervening circumstances indicating that the evidence should not be suppressed.  Additionally,

PAGE 8 - OPINION AND ORDER

the court finds that the official misconduct was sufficiently flagrant to support suppression here as a deterrent in the future.  Defendant was arrested without probable cause or reasonable suspicion, and then was held for an excessive period of time for the purpose of conducting an illegal search of his vehicle.  Accordingly, the court finds that suppression is an appropriate remedy in this case and all evidence gathered on August 13, 2008, including defendant's statements to the police, are suppressed.

## **CONCLUSION**

For the reasons provided, defendant's Motion to Suppress Evidence [20] is granted.

IT IS SO ORDERED.

Dated this  14  day of September, 2009.


        /s/ ANCER L. HAGGERTY  
                ANCER L. HAGGERTY
                United States District Judge